UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **HARLEYSVILLE INSURANCE COMPANY,** </br> Plaintiff/Counterclaim Defendant </br></br> v. </br></br> **HOLDING FUNERAL HOME, INC., et al.,** </br> Defendants/Counterclaim Plaintiffs. | **MEMORANDUM OPINION** </br> Case No. 1:15cv00057 |

This matter was heard before the undersigned on the Plaintiff's Motion Requesting The Disqualification of Defendants' Counsel, (Docket Item No. 52) ("Motion"), on January 17, 2017. Based on the reasoning set forth below, the Motion will be denied insofar as it seeks the disqualifications of defense counsel. Nonetheless, the undersigned finds that some sanction is appropriate and will award plaintiff its fees and costs incurred in pursuing the Motion.

The material facts are not in dispute. Plaintiff, Harleysville Insurance Company, ("Harleysville"), has sued the defendants seeking a declaratory judgment that it does not owe the defendants' fire loss claim for an October 22, 2014, loss of a funeral home in Castlewood, Virginia, based on the fire being intentionally set, material misrepresentations and failure to cooperate. The defendants have filed counterclaims alleging breach of insurance contract and bad faith against Harleysville. At issue before the court is defense counsel's access to

-1-

Harleysville's entire claims file, and whether the facts and circumstances surrounding this access require the disqualification of defense counsel.

In an effort to share information electronically, Thomas Cesario, a Senior Investigator for Nationwide Insurance Company, ("Nationwide"), which owns Harleysville, uploaded video surveillance footage of the fire loss scene, ("Video"), onto an internet-based electronic file sharing service operated by Box, Inc. Cesario then sent an email containing a hyperlink to the Box, Inc., internet site, ("Box Site"), by which Wes Rowe of the National Insurance Crime Bureau, ("NICB"), could access the file containing the Video using the internet and download the Video. The Video was placed on the Box Site, and the hyperlink to the Box Site sent by email to Rowe on September 22, 2015. The email to Rowe stated: "Here is the link to access the video" and provided the hyperlink. The email also contained the following statement:

> CONFIDENTIALITY NOTICE: This e-mail contains information that is privileged and confidential, and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you received this e-mail in error, please notify me immediately by return e-mail, and delete this e-mail and all attachments from your system.

(Docket Item No. 55-5 at 2.) Harleysville concedes that any person who used the hyperlink to access the Box Site had access to the electronic information stored there. The information was not password protected. Harleysville also concedes that any person who had access to the internet could have accessed the Box Site by simply typing in the url address in a web browser.

-2-

Case 1:15-cv-00057-JPJ-PMS   Document 68   Filed 02/09/17   Page 2 of 17   Pageid#: 1439

After receiving the September 22, 2015, email, Rowe used the hyperlink included to access the Box Site on two occasions, once on September 22, 2015, and, again, subsequently, to download the Video. On the occasions that Rowe used the hyperlink to access the Box Site, the only information contained there was the Video.

On April 28, 2016, Cesario placed files containing Harleysville's entire claims file and Nationwide's entire investigation file for the defendants' fire loss, ("Claims File"), on the Box Site to be accessed by Harleysville's counsel. Cesario then sent an email to Harleysville's counsel with the same hyperlink he sent to Rowe to be used by counsel to access the Box Site and retrieve a copy of the Claims File.

Defense counsel issued a Subpoena Duces Tecum, dated May 24, 2016, to NICB requesting NICB's entire file related to the fire. On or about June 23, 2016, NICB sent defense counsel electronic copies of all documents and information it had received from Harleysville, including a copy of the September 22, 2015, email from Cesario to Rowe containing the hyperlink to the Box Site. That same day, defense counsel, without the knowledge or permission of Harleysville or its counsel, used the hyperlink to gain access to the Box Site, which now contained the Claims File. Defense counsel downloaded the Claims File and reviewed it without ever notifying Harleysville's counsel that they had accessed and reviewed potentially privileged information.

On August 22, 2016, in response to a request for production of documents, defense counsel produced a thumb drive to Harleysville's counsel. When Harleysville's counsel reviewed the information contained on the thumb drive,

counsel discovered that it contained potentially privileged material inadvertently produced by the defendants. Harleysville's counsel alerted defense counsel. Defense counsel requested that the disclosed privileged documents be destroyed, and Harleyville's counsel complied. Upon further review of the information contained on the thumb drive, Harleysville's counsel discovered on October 27, 2016, that its Claims File was contained on the thumb drive and had been produced by defense counsel. The Claims File was located in a computer file entitled "NICB Video."

On November 1, 2016, Harleysville's counsel contacted defense counsel and requested that defense counsel destroy their copy of the Claims File. Defense counsel have conceded that all defense counsel of record have reviewed the materials accessed on the Box Site and that the materials have been shared with the defendants. Nationwide, subsequently, disabled the Box Site so it was no longer accessible to anyone, and Harleysville filed the Motion with the court.

Harleysville's counsel argues that defense counsel's access to Harleysville's Claims File was an improper, unauthorized access to privileged information requiring the disqualification of all defense counsel of record. Defense counsel argue that the Motion should be denied because Harleysville waived any claim of privilege or confidentiality by placing the information on the Box, Inc., site where it could be accessed by anyone.

Harleysville asserts that the Claims File reviewed by defense counsel contained information protected from disclosure by the attorney-client privilege and the work-product doctrine. Jurisdiction in this declaratory judgment action is based on diversity of citizenship, and the claims raised by the parties are governed

by Virginia state law. Therefore, under Federal Rule of Evidence 501, Virginia state law governs the applicability and waiver of any evidentiary privilege. *See* Fed. R. Evid. 501. The work-product doctrine, however, it not a privilege, but rather a qualified immunity from discovery. *See Continental Cas. Co. v. Under Armour, Inc.,* 537 F. Supp. 2d 761, 769-70 (D. Md. 2008) (citing 8 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2023 at 335 (2d ed. 1994)). Thus, Rule 501 does not apply, and federal law, not Virginia law, governs the applicability and waiver of the protection available under the work-product doctrine. *See Continental Cas. Co.,* 537 F. Supp. 2d at 769-70.

Under Virginia law, confidential attorney-client communications are privileged from disclosure. *See Walton v. Mid–Atl. Spine Specialists,* 694 S.E.2d 545, 549 (Va. 2010). "Nevertheless, the privilege is an exception to the general duty to disclose, is an obstacle to investigation of the truth, and should be strictly construed." *Commonwealth v. Edwards,* 370 S.E.2d 296, 301 (Va. 1988). Also, the attorney-client privilege may be expressly or impliedly waived by the client's conduct. *See Edwards,* 370 S.E.2d at 301. The proponent of the privilege has the burden to establish that the attorney-client privilege applies to a communication and that the privilege was not waived. *See Edwards,* 370 S.E.2d at 301; *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982).

Although it is hard to imagine that the entire Claims File would be protected by the Virginia attorney-client privilege, the court will assume that at least a portion of the file contains privileged information for the purpose of addressing the parties' arguments at issue here. *See Westchester Surplus Lines Ins. Co. v. Clancy & Theys Const. Co.,* 2013 WL 6058203, at *6 (E.D. N.C. Nov. 15, 2013) ( "Similar to work product, application of the attorney-client privilege can be

-5-

Case 1:15-cv-00057-JPJ-PMS   Document 68   Filed 02/09/17   Page 5 of 17   Pageid#: 1442

complicated in the context of insurance claims). Harleysville argues that the court should treat defense counsel's access to its claims file as an unauthorized involuntary disclosure or, in the alternative, as an inadvertent disclosure by Harleysville. Defense counsel argues that Harleysville's actions waived any claim that the information should be protected by the attorney-client privilege.

The Virginia Supreme Court addressed the difference between involuntary and inadvertent disclosures of privileged information in *Walton*. *See* 694 S.E.2d at 551-52. "…[I]n the waiver context, involuntary means that another person accomplished the disclosure through criminal activity or bad faith, without the consent of the proponent of the privilege…." *Walton*, 694 S.E.2d at 551. Inadvertent disclosure, on the other hand, includes action by the proponent of the privilege to knowingly, but mistakenly, produce a document or to unknowingly provide access to a document by failing to implement sufficient precautions to maintain its confidentiality. *See Walton*, 694 S.E.2d at 551-52. The court further reasoned that the determination of whether a disclosure was involuntary does not rest on the subjective intent of the proponent of the privilege:

> The … intention to maintain the attorney-client privilege does not lead inevitably to the conclusion that the disclosure was involuntary instead of inadvertent. If subjective intention of the proponent of the privilege controlled, a disclosure would always be considered involuntary. However, in the waiver context, involuntary means that another person accomplished the disclosure through criminal activity or bad faith, without the consent of the proponent of the privilege.

*Walton*, 694 S.E.2d at 551.

In this case, Harleysville argues that defense counsel gained access to its claims file by their unauthorized use of the hyperlink to access the Box Site. Therefore, Harleysville argues, the disclosure should be considered involuntary on its part and not a waiver of its claim of privilege. Harleysville argues that the only persons it authorized to use the hyperlink to access the Box Site and the materials located there were the NICB, to retrieve a copy of the Video, and its own counsel, to retrieve a copy of the Claims File. Harleysville argues that, in uploading its Claims File to the Box Site, it did not intend to share the information with anyone other than its own counsel. As stated above, however, the court in *Walton* held that a proponent's intention is not determinative of whether the disclosure was involuntary or inadvertent. In this case, Harleysville has conceded that its agent, Cesario, an employee of its parent company, intentionally and knowingly uploaded its Claims File to the Box Site. Under these facts, I find that the disclosure was not involuntary but, rather, was inadvertent under Virginia state law, in that Harleysville unknowingly provided access to information by failing to implement sufficient precautions to maintain its confidentiality.

Once a court determines that a disclosure was inadvertent, the court next must decide whether the disclosure waived the attorney-client privilege. The Virginia Supreme Court in *Walton* adopted a multi-factor analysis which requires the court to assess whether the holder of the privilege took reasonable steps to prevent disclosure and promptly took reasonable steps to rectify the error. Under this approach, the court stated, the following factors should be considered:

> (1) the reasonableness of the precautions to prevent inadvertent disclosures, (2) the time taken to rectify the error, (3) the scope of the discovery, (4) the extent of the disclosure, and (5) whether the party asserting the claim of privilege or protection for the communication

has used its unavailability for misleading or otherwise improper or overreaching purposes in the litigation, making it unfair to allow the party to invoke confidentiality under the circumstances.

*Walton*, 694 S.E.2d at 552.

In this case, there is no claim that the third factor -- the scope of discovery -- contributed to this inadvertent disclosure. This case does not involve the production of a few privileged pages among voluminous pages of production. Also, there is no claim that the fifth factor is pertinent to the court's decision in this case. The cases cited in *Walton* in support of this factor all hold that allowing a party to disclose some potentially privileged information for its advantage, while refusing to disclose other information, would be unfair. *See Walton*, 694 S.E.2d at 552. The defendants, here, are not claiming that Harleysville has disclosed the information, or a portion of the information, to gain any advantage in this litigation.

The remaining three factors, however, are determinative in this court's decision on this issue. With regard to the reasonableness of the precautions taken to prevent the disclosure, the court has no evidence before it that *any* precautions were taken to prevent this disclosure. The employee who uploaded Harleysville's Claims File to the Box Site had used the site previously to share information with a third-party, the NICB. It does not matter whether this employee believed that this site would function for only a short period of time or that the information uploaded to the site would be accessible for only a short period of time. Because of his previous use of the Box Site, this employee either knew – or should have known – that the information uploaded to the site was not protected in any way and could be accessed by anyone who simply clicked on the hyperlink. Despite this, this

-8-

employee purposefully uploaded the Claims File to the Box Site, making it accessible to anyone with access to the internet, thus making the extent of the disclosure vast. Also, Harleysville has stated that the Claims File was uploaded on April 26, 2016. The entire Claims File remained accessible on the Box Site until sometime after October 27, 2016, the date that Harleysville's counsel asserts that they discovered that defense counsel had the Claims File. Harleysville concedes that no action was taken any earlier than this date to block access to the Claims File despite the fact that Harleysville's counsel, themselves, used the unprotected hyperlink to access the Box Site to download the Claims File sometime after it was uploaded on April 26. Therefore, they, too, knew – or should have known – that the information was accessible on the internet. The court in *Walton* plainly stated, "waiver may occur if the disclosing party failed to take reasonable measures to ensure and maintain the document's confidentiality, or to take prompt and reasonable steps to rectify the error." 694 S.E.2d at 552.

Based on these facts, I find that Harleysville has waived any claim of attorney-client privilege with regard to the information posted to the Box Site. It has conceded that the Box Site was not password protected and that the information uploaded to this site was available for viewing by anyone, anywhere who was connected to the internet and happened upon the site by use of the hyperlink or otherwise. In essence, Harleysville has conceded that its actions were the cyber world equivalent of leaving its claims file on a bench in the public square and telling its counsel where they could find it. It is hard to image an act that would be more contrary to protecting the confidentiality of information than to post that information to the world wide web.

The court believes that its decision on this issue fosters the better public

-9-

Case 1:15-cv-00057-JPJ-PMS   Document 68   Filed 02/09/17   Page 9 of 17   Pageid#: 1446

policy. The technology involved in information sharing is rapidly evolving. Whether a company chooses to use a new technology is a decision within that company's control. If it chooses to use a new technology, however, it should be responsible for ensuring that its employees and agents understand how the technology works, and, more importantly, whether the technology allows unwanted access by others to its confidential information.

The court's ruling on waiver of the attorney-client privilege under Virginia state law, however, is not determinative of whether any claim to work-product protection has been waived under federal law. *See Continental Cas. Co.*, 537 F. Supp. 2d at 769-70. As stated above, the court will assume that the Claims File contains some information of the type that would be protected from disclosure by the work-product doctrine. The Fourth Circuit has recognized that the inadvertent disclosure of attorney work product, even opinion work product, can result in a waiver of its protected status. *See Martin Marietta Corp. v. Pollard,* 856 F.2d 619, 626 (4th Cir. 1988)*; Doe v. United States*, 662 F.2d 1073, 1081 (4th Cir. 1981); *Dunlap Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir. 1976). The Fourth Circuit has held, however, that a waiver should occur only when an attorney's or client's actions are "consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule." *Doe*, 662 F.2d at 1081. In general, this occurs only when the disclosure occurs under circumstances that substantially increase the possibility that an opposing party will obtain the protected information. *See Continental Cas. Co.,* 537 F. Supp. 2d at 772-73. Nevertheless, the Fourth Circuit has held that "release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection…. [T]o effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably

expect to limit the future use of the otherwise protected material." *Doe*, 662 F.2d at 1081.

The cases cited above were decided prior to the adoption of Federal Rule of Evidence 502. Rule 502 specifically applies to disclosures of information covered by the "work-product protection," which it defines as "the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial." FED. R. EVID. Rule 502; FED. R. EVID. Rule 502(g)(2). Rule 502(b) states that when a disclosure is made in a federal proceeding,

> the disclosure does not operate as a waiver … if:
> (1)  the disclosure is inadvertent;
> (2)  the holder of the … protection took reasonable steps to prevent disclosure; and
> (3)  the holder promptly took reasonable steps to rectify the error, including … following Federal Rule of Civil Procedure 26(b)(5)(B).

FED. R. EVID. Rule 502(b). Rule 26(b)(5)(B) states: "If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it." FED. R. CIV. P. 26(b)(5)(B). Also, the party seeking the protection of Rule 502(b) bears the burden of proving that each of it elements have been met. *See Maxtena, Inc. v. Marks,* 289 F.R.D. 427, 444 (D. Md. 2012) (citing *Amobi v. D.C. Dep't of Corrs.*, 262 F.R.D. 45, 53 (D.D.C. 2009). A disclosure operates as a waiver of work product protection unless Rule 502 applies. *See Waste Connections of N.C., Inc., v. K.R. Drenth Trucking, Inc.,* 2015 WL 4647823, at *3 (W.D. N.C. Aug. 5, 2015).

Our sister district, the Eastern District of Virginia, has recognized a scarcity of federal law defining what is meant by an inadvertent disclosure. *See ePlus Inc. v. Lawson Software, Inc.,* 280 F.R.D. 247, 254-55 (E.D. Va. 2012) (citing *Francisco v. Verizon South, Inc.,* 756 F. Supp. 2d 705, 710–11 (E.D. Va. 2010). Based, in part, on the Black's Law Dictionary definition of "inadvertence" as "[a]n accidental oversight; a result of carelessness," *In advertence,* BLACK'S LAW DICTIONARY (8th ed. 2004), the Eastern District has found that inadvertent disclosures must be based on unintentional acts. *See ePlus Inc.,* 280 F.R.D. at 254-55 (citing *New Bank of New England v. Marine Midland Realty Corp.,* 138 F.R.D. 479, 483 (E.D. Va. 1991)). In reaching this conclusion, the court quoted an unpublished opinion, *McCafferty's Inc. v. Bank of Glen Burnie,* Case No. MJG–96–3656, 1998 U.S. Dist. LEXIS 12861 (Apr. 23, 1998), which states:

> [A]n inadvertent waiver would occur when a document, which a party intended to maintain as confidential, was disclosed by accident such as a misaddressed communication to someone outside the privilege scope or the inadvertent inclusion of a privileged document with a group of nonprivileged documents being produced in discovery. In contrast, when a client makes a decision—albeit an unwise or even mistaken, decision—not to maintain confidentiality in a document, the privilege is lost due to an overall failure to maintain a confidence.

*ePlus Inc.,* 280 F.R.D. at 255.

Based on this reasoning, Harleysville's disclosure should not be considered "inadvertent" under federal law. Harleysville has not claimed that its agent's posting of its Claims File to the Box Site was not an intentional act. Also, based on my reasoning above, I cannot find that Harleysville, or its counsel, took reasonable steps to prevent its disclosure or to rectify the situation. Therefore, I find that Rule

-12-

Case 1:15-cv-00057-JPJ-PMS   Document 68   Filed 02/09/17   Page 12 of 17   Pageid#: 1449

502 does not apply in this situation to prevent a waiver of the work-product doctrine. Also, under the prior precedent, the agent's actions in posting the Claims File where it could be accessed by anyone on the internet is certainly a release of protected information in a way that did not limit its future use. *See Craft v. S. C. State Plastering, LLC*, 2017 WL 121854 (D. S.C. Jan. 12, 2017) (work-product protection waived when plaintiffs' counsel shared information at meeting open to the public); *E.I. Du Pont de Nemours and Co. v. Kolon Indus., Inc.,* 2010 WL 1489966, at *4-5 (E.D. Va. Apr. 13, 2010); *Little v. Brown & Williamson Tobacco Corp.,* 1999 WL 33591437, at *3-4 (D.S.C. Oct. 25, 1999) (posting information to internet waives claim of protection by work-product doctrine).

The conclusion that the acts of Harleysville, in hindsight, waived any claim of privilege or work-product protection over its Claims File does not, however, provide an answer to whether defense counsel acted properly under the circumstances and whether any sanction should be imposed. The conduct of attorneys appearing before this court is governed by the Virginia Rules of Professional Conduct as adopted by the Virginia Supreme Court. *See* W.D. VA. FED. R. DISC. ENF., Nov. 4, 1992 (amended Nov. 6, 1998 & June 16, 2016). Virginia Rule of Professional Conduct 3.4(d) states: "A lawyer shall not: … (d) Knowingly disobey or advise a client to disregard a standing rule or a ruling of a tribunal made in the course of a proceeding…." VA. SUP. CT. R. Rule 3.4. Both Virginia's and the federal rules of civil procedure address what is required of receiving counsel when counsel is notified that an opposing party is claiming that information produced in discovery is subject to a claim of privilege or work-product protection.

Under the federal rules, the receiving party, after being so notified,

> … must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.

FED. R. CIV. P. 26(b)(5)(B). The Virginia Rule states:

> Upon receiving such notice, any party holding a copy of the designated material shall sequester or destroy its copies thereof, and shall not duplicate or disseminate such material pending disposition of the claim of privilege or protection by agreement, or upon motion by any party. If a receiving party has disclosed the information before being notified of the claim of privilege or other protection, that party must take reasonable steps to retrieve the designated material.

VA. SUP. CT. R. 4.1(b)(6)(ii).

While not binding on this, or any, court, the Virginia State Bar Standing Committee on Legal Ethics has issued at least two Legal Ethics Opinions that address what the proper conduct should be when an attorney receives information an opposing party may claim as privileged or protected from disclosure. Legal Ethics Opinion, ("LEO"), No. 1702, issued November 24, 1997, addressed the conduct required when an attorney mistakenly received privileged information by facsimile from opposing counsel. This LEO states "once the receiving lawyer discovers that he has a confidential document inadvertently transmitted by opposing counsel or opposing counsel's client, he has an ethical duty to notify opposing counsel, to honor opposing counsel's instructions about disposition of the document, and not to use the document in contravention or opposing counsel's

-14-

instructions." The committee noted it had considered that, under the rules of evidence, an inadvertent disclosure might cause a loss of the attorney-client privilege. Nonetheless, the committee, quoting *Gunter v. Va. State Bar*, 385 S.E.2d 597, 600 (Va. 1989), wrote:

> The lowest common denominator, binding lawyers and laymen alike, is the statute and common law. A higher standard is imposed on lawyers by the Code of Professional Responsibility…. [W]e emphasize that more is required of lawyers than mere compliance with the minimum requirements of that standard. The traditions of professionalism at the bar embody a level of fairness, candor, and courtesy higher than the minimum requirements of the Code of Professional Responsibility.

While LEO No. 1702 was issued before the adoption of the Rules of Professional Conduct, its continuing validity recently was reaffirmed by the committee. In LEO No. 1871, issued July 24, 2013, the committee addressed an attorney's responsibility when a document containing privileged information was discovered among documents produced by opposing counsel for review in discovery. The committee opined that LEO No. 1702 required the receiving attorney to promptly notify opposing counsel that the document had been produced. The committee also opined that the reviewing attorney should have "either sequestered or destroyed his copy of the [document] pending a judicial determination of whether he could use the document."

In this case, defense counsel have admitted that they accessed the Box Site by the hyperlink provided in the email from Cesario to Rowe. The face of this email contained the Confidentiality Notice, which should have provided sufficient notice to defense counsel that the sender was asserting that the information was

protected from disclosure. Nonetheless, defense counsel downloaded the Claims File from the Box Site, did not reveal to Harleysville's counsel that they had obtained and reviewed the Claims File and further disseminated the Claims File to their clients and to law enforcement officials. At no time prior to the filing of the Motion, did defense counsel seek a determination from this court with regard to whether the materials they received were privileged or protected and what, if any, use they could make of the materials in this litigation. The only action defense counsel claim they took in response to discovering that they had access to Harleysville's Claims File – calling the Virginia State Bar Ethics Hotline for advice – belies any claim that they believed that their receipt and use of the materials without Harleysville's knowledge was proper under the circumstances.

This court should demand better, and the ruling here is intended not to merely tolerate the bare minimum ethically compliant behavior, but, instead, to encourage the highest professional standards from those attorneys who practice before the court. The court holds that, by using the hyperlink contained in the email also containing the Confidentiality Notice to access the Box Site, defense counsel should have realized that the Box Site might contain privileged or protected information. This belief should have been further confirmed when defense counsel realized that the Box Site contained not only the Video, but Harleysville's Claims File. That being the case, defense counsel should have contacted Harleysville's counsel and revealed that it had access to this information. If defense counsel believed that the circumstances which allowed its access to the information waived any claim of privilege or protection, they should have asked the court to decide the issue before making any use of or disseminating the information. Counsel chose not to do so, however, and, therefore, the court believes that such conduct requires some sanction.

Based on the decision that the posting of the Claims File to the internet waived any attorney-client privilege or any work-product protection over the information contained in the file, I find that the disqualification of defense counsel is not warranted in this situation. The disqualification of counsel is an extreme sanction. *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992); *Rogers v. Pittston Co.*, 800 F. Supp. 350, 353 (W.D. Va. 1992). Disqualification of counsel must be decided on a case-by-case basis with consideration of the harm imposed should counsel's representation continue. *See Rogers*, 800 F. Supp. at 353. Harleysville urges that such a sanction is necessary since all defense counsel have reviewed the Claims File. However, even if current counsel were disqualified, based on the court's ruling on waiver, substitute counsel would have access to the same information. Therefore, there can be no harm to Harleysville by allowing defense counsel to remain in this case. *See Aetna Cas. & Sur. Co. v. United States,* 570 F.2d 1197, 1201 (4th Cir. 1978) (disqualification inapplicable where "practical considerations" eliminate any real harm). Therefore, I find that the more reasonable sanction is that defense counsel should bear the cost of the parties in obtaining the court's ruling on the matter.

An appropriate order will be entered.

ENTERED: February 9, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-17-

Case 1:15-cv-00057-JPJ-PMS   Document 68   Filed 02/09/17   Page 17 of 17   Pageid#: 1454