# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15CV00057 |
| v. | ) ) | **OPINION AND ORDER** |
| HOLDING FUNERAL HOME, INC., ET AL., | ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) ) | |

*Robert Tayloe Ross, David Paul Abel, and Robert S. Reverski, Jr., Midkiff, Muncie & Ross, P.C., Richmond, Virginia, and John L. Cooley, CooleySublettPearson PLC, Roanoke, Virginia, for Plaintiff and Counter-Defendant Harleysville Insurance Company; Glenn H. Silver, C. Thomas Brown, Erik B. Lawson, and Caitlin M. Brown, Silver & Brown, Fairfax, Virginia, for Insureds and Counter-Claimants Holding Funeral Home, Inc., Golden Rule Family Management, LLC, and L.J. Horton Florist, Inc.*

This is a diversity action arising out of a claim for fire insurance coverage. Harleysville Insurance Company ("Harleysville") seeks a declaration that it has no duty to pay benefits under its policy to the insureds, Holding Funeral Home, Inc., Golden Rule Family Management, LLC, doing business as Holding Funeral Home of Castlewood, and L.J. Horton Florist, Inc. (the "Insureds"). The Insureds counterclaim for breach of the insurance contract.

Proceedings on the merits of this case have been stayed pending the disposition of a related criminal prosecution. However, as a separate matter, Harleysville has moved to disqualify counsel for the Insureds. The magistrate judge denied the motion, and the parties' objections to that decision, as well as an additional Motion to Strike, are now before me for review.

I. FACTUAL SUMMARY.

The basic facts surrounding the motion seeking disqualification of opposing counsel are uncontested. On October 22, 2014, the Insureds' funeral home burned to the ground. Harleysville received prompt notice of the fire loss and resulting claim. It immediately launched an investigation, and its independent fire expert found that the fire had been intentionally set. In its Complaint, filed in this court on November 23, 2015, Harleysville alleges that representatives of the Insureds "made material misrepresentations to Harleysville during the investigation of the Fire and the Claim." Compl. ¶ 33, ECF No. 1. These alleged misrepresentations are also the subject of the pending criminal prosecution. Indictment, *United States v. Riebe*, 1:17CR00014, ECF No. 2 (W.D. Va. Apr. 24, 2017).

Sometime after the fire, one or more employees of Nationwide Insurance Company ("Nationwide"), which owns Harleysville, began corresponding with

representatives of the National Insurance Crime Bureau ("NICB").[1]  During the course of that correspondence, NICB asked Harleysville to provide surveillance video footage of the fire scene.  In response, Thomas Cesario, a senior investigator for Nationwide, uploaded the video file to an electronic folder in an Internet-based file-sharing service operated by Box, Inc. ("Box Folder").  On September 22, 2015, Cesario sent an email to NICB agent Wes Rowe.  The email contained a "sharing" link to the Box Folder and stated, "Here is the link to access the video."  Cesario Email, ECF No. 55-5.  The email also contained a notice that it was "privileged and confidential."  *Id.*  Rowe used the link to access the Box Folder on two occasions shortly after receiving the email.  On both occasions, the video was the only file contained in the folder.  No one from NICB accessed the Box Folder after that point.

Some seven months later, Cesario was asked to share Harleysville's claims file and Nationwide's investigation file (collectively, "Claims File") with Harleysville's counsel.  On April 28, 2016, Cesario uploaded the Claims File to the Box Folder, generated a "sharing" link to the folder, and sent an email to Harleysville's counsel containing the link to the folder.  Cesario did not realize that

---

[1]  The NICB is a non-profit organization that partners with insurance companies and law enforcement agencies to fight insurance fraud and insurance crime.  *See About NICB*, National Insurance Crime Bureau, available at https://www.nicb.org/about-nicb.

the link he provided to Harleysville's counsel was identical to the link he had provided to NICB seven months earlier.

On May 24, 2016, Insureds' counsel issued a subpoena duces tecum to NICB requesting NICB's entire file relating to the funeral home fire. On June 23, 2016, NICB responded to the subpoena with electronic copies of all documents and information it had received from Harleysville. Included in the response was Cesario's September 22 email to Rowe, which contained the link to the Box Folder.

That same day after receiving NICB's response, Insureds' counsel used the link contained in Cesario's email to access the Box Folder. When Cesario sent the link to NICB in September 2015, the Box Folder contained only the video; however, by the time Insureds' counsel came into possession of the link in June 2016, the Box Folder contained the Claims File as well. Insureds' counsel downloaded and reviewed the Claims File. During their review, Insureds' counsel noted that certain documents were marked as "Confidential" and "Attorney-Client Privileged." Upon discovering these documents, they contacted the Virginia State Bar's ethics hotline for advice as to how to proceed, as well as conducted research of their own. Insureds' counsel, incorrectly assuming that Harleysville had used the Box Folder to share the Claims File with NICB, came to the conclusion that any attorney-client and work-product privileges had been waived by Harleysville

and continued their review of the file. Insureds' counsel neither notified Harleysville's counsel that they were in possession of the Claims File nor sought this court's ruling on the issue of waiver.

On August 22, 2016, Insureds' counsel produced a thumb drive to Harleysville's counsel in response to a request for production of documents. The thumb drive contained "tens of thousands of pages of documents, sorted into hundreds of folders and subfolders." Mem. Supp. Mot. to Disqualify 5, ECF No. 53. During their review of the documents contained on the thumb drive, Harleysville's counsel noticed certain potentially privileged material inadvertently produced by Insureds' counsel. Harleysville's counsel notified Insureds' counsel of the disclosure, and Insureds' counsel requested that the privileged documents be destroyed. Harleysville's counsel complied with this request and continued to review the contents of the thumb drive.

On October 27, 2016, Harleysville's counsel discovered that its Claims File was contained on the thumb drive in a folder labeled "NICB Video." A few days later, on November 1, Harleysville's counsel contacted Insureds' counsel and requested that Insureds' counsel destroy their copies of the Claims File. Insureds' counsel refused, and Harleysville's counsel subsequently filed the present motion to disqualify Insureds' counsel.

In issuing her Memorandum Opinion on this motion, the magistrate judge did not have the benefit of reviewing the Claims File, but assumed that at least some of the materials that make up the Claims File were privileged. Mem. Op. 5, ECF No. 68. Upon my in camera review of the Claims File, I find that it did, in fact, contain clearly privileged material. *See infra* at IV.A.1. Insureds' counsel have conceded that they reviewed the entire Claims File and that they shared the Claims File with counsel for both sides in the related criminal case.

## II. PROCEDURAL HISTORY.

In seeking disqualification, Harleysville asserted that Insureds' counsel improperly accessed and reviewed certain privileged documents, that they concealed this access from Harleysville's counsel, and that they refused to destroy the Claims File when asked to do so. As relief, Harleysville sought the disqualification of Insureds' counsel. Harleysville also sought an order directing Insureds' counsel to destroy copies of the Claims File, directing Insureds' counsel not to disclose the Claims File, and barring the use of the Claims File in this action. *See generally* Mem. Supp. Mot. to Disqualify, ECF No. 53. Insureds' counsel contended in response that disqualification was inappropriate, first on the ground that Harleysville had failed to prove that material in the Claims File was privileged, and second on the ground that any privilege was waived when

Harleysville posted the Claims File to a publicly-accessible folder on the Internet. *See generally* Opp'n to Mot. to Disqualify, ECF No. 55.

The motion seeking disqualification was referred to the magistrate judge for determination. Following full briefing by the parties, the magistrate judge held an evidentiary hearing and she invited counsel to submit supplemental evidence and legal authorities following the hearing. Both Harleysville and the Insureds did so. The Insureds subsequently objected to Harleysville's submission, arguing that the evidence contained therein should properly have been presented at the hearing, where the witnesses would have been subject to cross-examination and evidentiary objections. The magistrate judge agreed and sustained Insureds' objections, a decision to which Harleysville's counsel timely objected. Order, ECF No. 67; Pl.'s Objs., ECF No. 73.

The magistrate judge subsequently denied the motion to disqualify. She found that any privilege had been waived when Harleysville uploaded the files to a publically accessible, non-password-protected website. Mem. Op. 9, 13, ECF No. 68. Because any privilege was waived, she concluded, disqualification of Insureds' counsel was unwarranted, since replacement counsel would be entitled to access the same information. *Id.* at 17. However, she also held that because Insureds' counsel knew or should have known they had accessed potentially-privileged information, they should have revealed this access to Harleysville's

counsel and should have asked the court to decide the question of waiver before making use of the information. *Id.* at 16. Because they did not do so, she said, their conduct "require[d] some sanction." *Id.* She accordingly imposed monetary sanctions on the Insureds' counsel.

Both Harleysville and the Insureds filed timely objections to the magistrate judge's rulings. Harleysville objected to the magistrate judge's finding that Harleysville had waived any privilege and to her denial of their motion to disqualify. Pl.'s Objs., ECF No. 73. Insureds' counsel objected to the magistrate judge's sua sponte imposition of monetary sanctions, arguing that such sanctions were both unwarranted and unjust. Defs.' Objs., ECF No. 70.

After careful review of the record to that point, I concluded that there was a need for additional evidence as to certain important matters, including those encompassed by Harleysville's counsel's supplementary submission, which the magistrate judge excluded from consideration. Accordingly, I ordered a second evidentiary hearing and directed the parties to present additional evidence. Op. & Order, ECF No. 96.

Prior to the hearing, Harleysville filed two written experts' reports in conjunction with the hearing: one by Paul Georgiadis, who testified at the hearing, and one by Michael Rigsby, who did not testify. Following the hearing, the Insureds filed a Motion to Strike both reports, arguing both that my order directing

the evidentiary hearing did not permit the parties to file such reports and that Michael Rigsby's report was improper because he did not testify, and thus was not subject to cross-examination at the hearing.

Before me for review are (1) the Harleysville objections to the magistrate judge's finding that Harleysville had waived any privilege, her finding that Harleysville's counsel's supplemental affidavits could not be considered, and her denial of the motion to disqualify; (2) the Insureds' objection to the magistrate judge's imposition of sanctions; and (3) the Insureds' Motion to Strike the written expert reports of Paul Georgiadis and Michael Rigsby. I consider each in turn.

## III. STANDARD OF REVIEW.

The issues raised by both parties — namely, questions of privilege and waiver along with sanctions — are "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a). I therefore must consider the parties' objections to the magistrate judge's order and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

Findings of fact are reviewed under the Rule's "clearly erroneous" standard. *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1288 (4th Cir. 1985); *see also Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014); *HSBC Bank USA, Nat'l Ass'n v. Resh*, No. 3:12-CV-00668, 2014 WL 317820, at *7 (S.D.W. Va. Jan. 28, 2014). A court's "finding is 'clearly erroneous' when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Harman v. Levin (In re Robertson)*, 772 F.2d 1150, 1153 (4th Cir. 1985).

In addition, it is within my discretion to receive and consider additional evidence. *United States v. Caro*, 461 F. Supp. 2d 478, 480 n.2 (W.D. Va. 2006), *aff'd*, 597 F.3d 608 (4th Cir. 2010); *see also United States v. Frans*, 697 F.2d 188, 191 n.3 (7th Cir. 1983) (noting that Rule 72(a) "do[es] not necessarily restrict district court review of a magistrate's findings" and stating that the district court may "receiv[e] additional evidence or conduct[] a full review"); 12 Charles Allen Wright, et al., *Federal Practice and Procedure* § 3069 (2d ed. 2017) (noting that "a district judge should have at least the authority to consider further evidence in reviewing rulings on nondispositive matters"). I have supplemented the magistrate judge's findings of fact based on evidence adduced at the hearing before me.

The magistrate judge's decisions on questions of law, however, I review under the Rule's "contrary to law" standard. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010). In the context of Rule 72(a), this "contrary to law" standard is equivalent to de novo review. *Id.* (holding that review of a question of law "is plenary under the 'contrary to law' branch of the Rule 72(a) standard" and that therefore, "[f]or questions of law, there is no practical difference between

review under Rule 72(a)'s 'contrary to law' standard and . . . [a] de novo standard" (citations omitted)); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (holding that while "[t]he district court is bound by the clearly erroneous rule in findings of facts[,] the phrase 'contrary to law' indicates plenary review as to matters of law"); *Bruce*, 21 F. Supp. 3d at 594; *HSBC Bank USA, Nat'l Ass'n*, 2014 WL 317820, at *7; 12 Charles Allen Wright, et al., *supra* (noting that "[r]egarding legal issues, the language 'contrary to law' appears to invite plenary review").

## IV. PRIVILEGE AND WAIVER.

### A. The Claims File Contained Privileged Materials.

This court has jurisdiction over this declaratory judgment action based on diversity of citizenship. Accordingly, questions regarding the applicability and waiver of any evidentiary privilege, including the attorney-client privilege, are governed by Virginia state law. Fed. R. Evid. 501.

The work-product doctrine, however, is a "qualified immunity from discovery," rather than an evidentiary privilege. *FTC v. Grolier Inc.*, 462 U.S. 19, 24 (1983) (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)); *see also Chevron Corp. v. Page* (*In re Naranjo*), 768 F.3d 332, 345 n. 16 (4th Cir. 2014); Fed. R. Civ. P. 26(b)(3). Questions regarding the applicability and waiver of the protection provided by the work-product doctrine are therefore governed by federal law.

*Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 769-70 (D. Md. 2008).

## 1. Attorney-Client Privilege.

In Virginia, "confidential communications between an attorney and his or her client made in the course of that relationship and concerning the subject matter of the attorney's representation are privileged from disclosure." *Walton v. Mid-Atl. Spine Specialists, P.C.*, 694 S.E.2d 545, 549 (Va. 2010) (citations omitted). The purpose of the privilege is to "encourage clients to communicate with attorneys freely, without fearing disclosure of those communications . . . thereby enabling attorneys to provide informed and thorough legal advice." *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). However, because the privilege is an "obstacle to investigation of the truth," it "should be strictly construed." *Id.* (quoting *Commonwealth v. Edwards*, 370 S.E.2d 296, 301 (Va. 1988)). The burden of showing the privilege applies is on the proponent of the privilege — in this case, Harleysville. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

At the second evidentiary hearing, Harleysville's counsel provided the court with a copy of the Claims File. From my in camera review, I find that the attorney-client privilege attaches to multiple documents contained in the Claims File. Such documents include lengthy multipage reports by Harleysville's counsel

to their client of the results of the attorneys' factual investigation and analysis of the law, as well as advice on litigation tactics and strategy. These documents are the epitome of privilege.

## 2. Work-Product Protection.

"[T]he work product doctrine belongs to the attorney and confers a qualified privilege on documents prepared by an attorney in anticipation of litigation." *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011) (citing, *inter alia*, *Hickman*, 329 U.S. at 509-14). As with the attorney-client privilege, the burden of showing that the work-product protection applies lies with Harleysville. From my in camera review, I find that the work-product protection applies to multiple documents contained in the Claims File.

## B. The Privilege and Protection Were Not Waived.

### 1. Attorney-Client Privilege.

#### a. The Disclosure Was Inadvertent.

The attorney-client privilege "may be expressly or impliedly waived by the client's conduct." *Walton*, 694 S.E.2d at 549. "[T]here is no bright line rule for what constitutes waiver"; instead, courts must "consider the specific facts of each case in making a waiver determination." *Id.* "The proponent of the privilege has the burden to establish that the attorney-client relationship existed, that the

communication under consideration is privileged, and that the privilege was not waived." *Id.*

Where a privileged document is inadvertently or involuntarily disclosed, the court must determine whether that disclosure constitutes a waiver of the attorney-client privilege. *Id.* at 550. An inadvertent disclosure may occur where a document is produced "knowingly, but mistakenly" or where the client "unknowingly provid[es] access to a document by failing to implement sufficient precautions to maintain its confidentiality." *Id.* at 552. An involuntary disclosure may occur where a document is "knowingly produced by someone other than the holder of the privilege through criminal activity or bad faith" and "without the consent of the proponent of the privilege." *Id.* at 551.

Under the facts presented by this case, I find that disclosure of the privileged materials in the Claims File was inadvertent. The evidence shows that when investigator Cesario uploaded the Claims File to the Box Folder, he unknowingly made the Claims File available to NICB. NICB, in turn, unknowingly made the Claims File available to Insureds' counsel. Neither Harleysville nor Harleysville's counsel were aware the Insureds' counsel had access to the Claims File until they discovered the Claims File among documents produced by Insureds' counsel. Moreover, Harleysville's disclosure of the Claims File was intended for Harleysville's counsel, not for Insureds' counsel or NICB. This is a case where the

client unknowingly and unintentionally made privileged documents available to a third party, and such disclosure is inadvertent under the law.

Harleysville asserts that the disclosure of the Claims File was involuntary because it "was accomplished through [Insureds'] Counsel's misconduct." Pls.' Objs. 2, ECF No. 73. This is incorrect. A document is not disclosed by the person who receives the document; it is disclosed by the person who sends it. Here, the disclosure was made by Harleysville when it uploaded the Claims File to the same Box Folder it had used to share the video with NICB. Insureds' counsel did not conduct themselves appropriately, and there is evidence to support Harleysville's assertion that they "attempted in bad faith to conceal [their] access of the [Box Folder] and procurement of [the Claims File]," *id.*, but it would defy logic to conclude that Insureds' counsel disclosed the documents by viewing them.

Accordingly, to the extent that Harleysville objects to the magistrate judge's finding that the disclosure was inadvertent, such objection is overruled.

### b. There Was No Waiver.

Having found that Harleysville's disclosure was inadvertent, I must now determine whether the attorney-client privilege has been waived. "[W]aiver may occur [through inadvertent disclosure] if the disclosing party failed to take reasonable measures to ensure and maintain the document's confidentiality, or to take prompt and reasonable steps to rectify the error." *Walton*, 694 S.E.2d at 552.

To determine whether the privilege has been waived, courts must consider five factors:

> (1) [T]he reasonableness of the precautions to prevent inadvertent disclosures, (2) the time taken to rectify the error, (3) the scope of the discovery, (4) the extent of the disclosure, and (5) whether the party asserting the claim of privilege . . . has used its unavailability for misleading or otherwise improper or overreaching purposes in the litigation, making it unfair to allow the party to invoke confidentiality under the circumstances.

*Id.* "None of these factors is independently dispositive." *Id.* As the magistrate judge correctly noted, Factors Three and Five have no applicability to this case.[2] Mem. Op. 8, ECF No. 68. I therefore consider the remaining three factors in turn.

### i. Factor One: Reasonableness of Precautions.

As holder of the privilege, Harleysville had the responsibility to take reasonable precautions to safeguard the Claims File and to preserve its confidentiality. Despite the eventual disclosure of the Claims File, I find that the precautions taken by Harleysville were reasonable under the circumstances.

Box, Inc. is one of many "cloud storage" providers that allows users to store, share, and otherwise manage files using the Internet. The cyber-arena in which this file storage and sharing takes place is widely known as the "cloud." Nationwide uses its account with Box, Inc. to share files that are too large to be sent by email. To use the file-sharing service, Nationwide employees can make a

---

[2] To the extent that Harleysville objects to the magistrate judge's decision not to consider Factor Five in making a determination of waiver, such objection is overruled.

folder in the Nationwide Box account, upload one or more files to that folder, and click a button to generate a "sharing" link to the folder, which can be sent by email. The recipient can then use the link to access the folder and view or download the files inside.

The disclosure in this case occurred because Nationwide uploaded the Claims File to the Box Folder after sharing the link to the Box Folder with NICB. The Box Folder was not password-protected. As a result, any person with access to the Internet could have viewed its contents simply by typing the URL for the "sharing" link into a web browser.[3]

However, the Box Folder was not searchable through Google or any other search engine, nor was it searchable on the Box, Inc. website. Therefore, a person would need to enter the specific URL of the "sharing" link in order to access the folder. The "sharing" link, which was generated by Box, Inc., consisted of 32 randomly-generated alphanumeric characters. As a result, the URL for the Box Folder contained in Cesario's email looked like this:

https://nationwide.box.com/s/[xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx].

Each "x" represents a randomly-generated alphanumeric character. *See* Cesario Email, ECF No. 55-5.

---

[3] "URL" stands for "Uniform Resource Locator" and is the "address" of a web page.

The nature of this URL is dispositive as to the question of reasonableness. Although any person who knew the URL could access the Box Folder without a password, as a practical matter, the URL itself functions as a password. The URL contains a string of 32 characters, where each character can be one of 36 letters or numbers. These parameters mean that there are $6.3340287 \times 10^{49}$ (63,340,287,000,000,000,000,000,000,000,000,000,000,000,000,000) possible "sharing" links. The security of the Box Folder, then, is inherent in the nature of the URL. In this context, the magistrate judge's analogy of Harleysville leaving the Claims File in a briefcase on a public park bench and telling its counsel where it could be found, is inapposite. Practically speaking, it would be impossible for *anyone*, let alone a particular person connected with the case, to accidently stumble across the Box Folder. As far as real-world equivalents go, it is more appropriate to characterize the briefcase as having been buried somewhere in a large park, technically publicly-accessible, but for all practical purposes, secured.

Moreover, when Cesario uploaded the video to the Box Folder in September 2015, it was his first time using the Box, Inc. file-sharing service. He understood the Box Folder to be secure and believed that only someone who was specifically invited to view the folder or who received the direct "sharing" link to the folder would be able to access the folder and its contents. In addition, Cesario believed that the "sharing" link generated by Box, Inc. to allow him to share the Claims File

with Harleysville's counsel was a unique link. He did not know it was the same "sharing" link that Box, Inc. had generated to allow him to share the video with NICB seven months earlier. Furthermore, he believed the original "sharing" link he had sent to NICB had expired in a manner similar to Nationwide's encrypted emails, which expire within five to ten days after being sent. A review of Box, Inc.'s website reveals that such security precautions are available, and the evidence adduced at the second hearing showed that Cesario, who was inexperienced with the Box, Inc. service and who lacks a technical background, believed he was implementing them. *See Kyko Global Inc. v. Prithvi Info. Sols. Ltd.*, No. C13-1034, 2014 WL 2694236, at*4 (W.D. Wash. June 13, 2014) (finding no waiver where proponent genuinely believed the documents were not accessible). Finally, the privileged materials were marked as privileged and confidential, and the email Cesario sent to Rowe containing the link to the Box Folder contained a confidentiality notice. I therefore conclude that Nationwide, acting for Harleysville, did take reasonable precautions to prevent an inadvertent disclosure of the Claims File and that this factor weighs against a finding of waiver. Accordingly, to the extent that Harleysville objects to the magistrate judge's finding that it did not take reasonable precautions, such objection is sustained.

*ii. Factor Two: Time Taken to Rectify Error.*

The disclosure technically occurred on April 26, 2016, when Cesario uploaded the Claims File to the Box Folder. However, no one was aware of the disclosure at that time. NICB remained ignorant of the Claims File's existence, and, as I explained above, Harleysville believed the Claims File was secure. It was not until June 23, 2016, when NICB responded to the subpoena and Insureds' counsel accessed the Box Folder, that anyone became aware of the disclosure. Harleysville's counsel were not notified of the disclosure until October 27, 2016, — four months later — when they discovered the Claims File on a thumb drive produced to them by Insureds' counsel. Following their discovery, Harleysville's counsel reached out to Insureds' counsel to request destruction of the privileged materials on November 1, 2016. In short, Harleysville's counsel attempted to rectify the error within four days of discovering it.

It is true that Harleysville's counsel used the "sharing" link to access the Box Folder in April 2016. However, I do not believe that, simply by using the "sharing" link to access the Box Folder, Harleysville's counsel should have realized that the Claims File was publicly available. It was perfectly reasonable — and, indeed, accurate — for Harleysville's counsel to expect that no one could access the Box Folder unless he was given that specific URL. The fact that Harleysville's counsel could access the Box Folder via a 32-character, randomly-

generated "sharing" link in an email sent by Harleysville did not, and should not have, put Harleysville's counsel on notice that anyone with an Internet connection could do the same. I therefore conclude that this factor weighs against a finding of waiver. To the extent that Harleysville objects to the magistrate judge's finding that Harleysville and Harleysville's counsel waited too long to rectify the error, such objection is sustained.

### iii. Factor Four: Extent of Disclosure.

The disclosure in this case was not extensive, as Harleysville only inadvertently disclosed the privilege documents to Insureds' counsel. Although NICB could have accessed the Claims File through the Box link, it did not do so; NICB was unaware that it had access to the Claims File. It is true that Insureds' counsel subsequently distributed the privileged documents to others, but Harleysville should not be punished for these later disclosures, which were beyond its control. Harleysville, through Cesario, only disclosed the privileged documents to one party. I therefore conclude that the extent of the disclosure does not weigh in favor of a finding of waiver. To the extent that Harleysville objects to the magistrate judge's finding that the extent of the disclosure weighed in favor of waiver, such objection is sustained.

For the reasons described above, I find that, although there was an inadvertent disclosure, a balancing of the relevant factors compels the conclusion

that the attorney-client privilege was not waived. Accordingly, to the extent Harleysville objects to the magistrate judge's finding that there was a waiver of privilege, such objection is sustained.[4]

### 2. Work-Product Protection.

#### a. The Disclosure Was Inadvertent.

The work-product protection may be waived, "expressly or by conduct," by either the attorney or the client. *Doe v. United States* (*In re Doe*), 662 F.2d 1073, 1079 (4th Cir. 1981); *see also United States v. Nobles*, 422 U.S. 225, 239 (1975) ("The privilege derived from the work-product doctrine . . . may be waived."). The rules of evidence provide that a disclosure of material protected by attorney-client privilege or work-product doctrine made in a federal proceeding "does not operate as a waiver" if:

(1) the disclosure is inadvertent;

(2) the holder of the . . . protection took reasonable steps to prevent disclosure; and

(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

---

[4] To the extent Harleysville objects to the court's consideration of the issue of waiver in the first instance, on the grounds that the Insureds did not raise this issue in a motion under Rule 26, such objection is overruled. Because the issue of waiver is of fundamental importance in determining whether disqualification is appropriate, *see infra* at V.B, the issue must necessarily be decided in the course of ruling on Harleysville's motion.

Fed. R. Evid. 502(b). Importantly for this diversity case, Rule 502(b) "applies even if state law provides the rule of decision." Fed. R. Evid. 502(f).

There is a dearth of authority in the Fourth Circuit, and in federal law generally, as to the definition of an "inadvertent disclosure" under the meaning of Rule 502. *See Francisco v. Verizon S., Inc.*, 756 F. Supp. 2d 705, 718 (E.D. Va. 2010) (observing that "[f]ew cases in the Fourth Circuit address what constitutes inadvertent disclosures, or even explicitly define the term 'inadvertent'" (citing cases)). The Advisory Committee notes to Rule 502 elaborate as to the question of waiver generally, but they fail to provide any guidance as to the meaning of the term "inadvertent."

Black's Law Dictionary defines "inadvertence" as "[a]n accidental oversight; a result of carelessness." Black's Law Dictionary (10th ed. 2014); *see also Francisco*, 756 F. Supp. 2d at 719. Nevertheless, the Eastern District of Virginia has held that a disclosure was not "inadvertent" where the document was produced intentionally, and the only mistake was producing it in unredacted form. *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 255 (E.D. Va. 2012). This holding was based on an unpublished opinion from the District of Maryland, *McCafferty's, Inc. v. Bank of Glen Burnie*, in which the court found that the disclosure was not inadvertent because the party claiming the privilege "knew full well that [it] was making a disclosure of the [allegedly privileged] document. . . .

[It] just didn't consider the document as one to be kept confidential."  No. MJG-96-3656, 1998 LEXIS 12861, at *5 (D. Md. Apr. 23, 1998).  The *McCafferty's* court stated:

> An inadvertent waiver would occur when a document, which a party intended to maintain confidential, was disclosed by accident such as a misaddressed communication to someone outside the privilege scope or the inadvertent inclusion of a privileged document with a group of nonprivileged documents being produced in discovery. In contrast, when a client makes a decision — albeit an unwise, or even mistaken, decision — not to maintain confidentiality in a document, the privilege is lost due to an overall failure to maintain a confidence.

*Id*.

While I agree with the magistrate judge that the courts' analyses in *ePlus* and *McCafferty's* are helpful, I disagree that they lead to the conclusion that Harleysville's disclosure is not "inadvertent" under federal law.  In *McCafferty's*, the proponent disclosed the privileged document to a third party.  Upon learning that the third party had the document, the proponent "did nothing to indicate that it was concerned about any breach of confidentiality."  *Id.* at *5-6.  This "lack of concern about the confidentiality of the [document] indicate[d] that the [proponent] did not maintain confidentiality of the document."  *Id.* at *6-7.

Here, by contrast, the third party — NICB — never viewed, or even knew of the existence of, the Claims File.  More importantly, as soon as Harleysville's counsel learned that Insureds' counsel was in possession of the Claims File, they took action.  This is not a case in which Harleysville knew that NICB or Insureds'

counsel had the Claims File but failed to do anything about it; it is a case in which Harleysville was ignorant of the fact that the Claim's File had been made available. Moreover, as I have noted above, the evidence shows that Harleysville believed the Claims File was not accessible to any entity other than its own counsel and that they believed their file-sharing method was secure. The *McCafferty's* court itself stated that disclosure would be inadvertent where the party intended to maintain the document as confidential, but disclosed it by accident. *Id.* at *5. Here, Harleysville intended and attempted to maintain the confidentiality of the Claims File, even if it ultimately failed.

Because Harleysville intended to maintain the confidentiality of the Claims File, and because it was ignorant of the fact that the Claims File was accessible to anyone other than its own counsel, I find that the disclosure was inadvertent. To the extent Harleysville objects to the magistrate judge's finding that the disclosure was intentional, such objection is sustained.

### b. There Was No Waiver.

As noted above, Rule 502 provides that a disclosure is not a waiver where it was inadvertent, the holder of the privilege "took reasonable steps to prevent disclosure," and the holder of the privilege "promptly took reasonable steps to rectify the error, including . . . following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b).

The Advisory Committee Notes to Rule 502 explain that the rule is "in accord with the majority view on whether inadvertent disclosure is a waiver." Fed. R. Evid. 502 advisory committee's note to 2007 amendment. The Notes further explain that while some courts have adopted a five-factor test identical to the one laid out in *Walton*, "[t]he rule does not explicitly codify that test, because [the test] is really a set of non-determinative guidelines that vary from case to case. [Rule 502] is flexible enough to accommodate any of those listed factors." *Id.*

Observing that the five-factor test completely encompasses the three factors described in Rule 502, at least one court in this circuit has applied the five-factor test when determining whether a waiver has occurred under Rule 502(b). *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 271 F.R.D. 125, 133-36 (S.D. W. Va. 2010). Others, including this court, have simply applied the three factors of Rule 502(b). *See, e.g.*, *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 444 (D. Md. 2012); *King Pharm., Inc. v. Purdue Pharma, L.P.*, No. 1:08CV00050, 2010 WL 2243872, at *2 (W.D. Va. June 2, 2010).

I have already found that the disclosure was inadvertent, that Nationwide (for Harleysville) took reasonable steps to prevent disclosure of the Claims File, and that Harleysville's counsel promptly took reasonable steps to rectify the disclosure. Harleysville's counsel also promptly complied with Federal Rules of Civil Procedure 26(b)(5)(B) and 45(e)(2)(B), which require them to notify

Insureds' counsel of their claim. Fed. R. Civ. P. 26(b)(5)(B) (governing discovery); Fed. R. Civ. P. 45(e)(2)(B) (governing subpoenas). In addition, I have already found that application of the five-factor test weighs against a finding of waiver. *See supra* at IV.B.1.b. Accordingly, I conclude that the work-product protection was not waived. To the extent Harleysville objects to the magistrate judge's finding that there was a waiver of the work-product protection, such objection is sustained. To the extent Harleysville objects to the magistrate judge's decision to apply the five-factor test, resulting in a finding of waiver, such objection is overruled as moot.

## V. SANCTIONS.

### A. Insureds' Counsel's Conduct Violated Ethical Standards.

#### 1. Applicable Ethical Standards.

As the magistrate judge noted in her opinion, "[t]he conduct of attorneys appearing before this court is governed by the Virginia Rules of Professional Conduct as adopted by the Virginia Supreme Court." Mem. Op. 13, ECF No. 68 (citing W.D. Va. Fed. R. Disc. Enf., Nov. 4, 1992 (amended Nov. 6, 1998 & June 16, 2016)). Virginia Rule of Professional Conduct 3.4(d) states: "A lawyer shall not: . . . (d) Knowingly disobey . . . a standing rule." Va. Sup. Ct. R. 3.4(d).

Federal Rule of Civil Procedure 45(e)(2)(B) states:

> If information produced in response to a subpoena is subject to a claim of privilege or of protection, . . . the person making the claim

may notify any party that received the information of the claim and the basis for it. *After being notified, a party must promptly return, sequester, or destroy the specific information and any copies it has*; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and *may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim.*

Fed. R. Civ. P. 45(e)(2)(B) (emphasis added). Importantly, the Rule does not require that the person asserting the claim of privilege be the one who produced the material; instead, the Rule only refers to information that is "subject to a claim of privilege." *Id.* Thus, Rule 45 required Insureds' counsel, upon notification of Harleysville's counsel's claim of privilege, to, among other things, "promptly return, sequester, or destroy" the privileged materials.[5]

Although Rule 45 imposes certain obligations on Insureds' counsel, the Rules of Civil Procedure are not themselves disciplinary rules. Given the odd circumstances of this case — that is, that the disclosure occurred pursuant to a third-party subpoena as a result of an inadvertent disclosure by the privilege holder — there appear to be no black-letter disciplinary rules, either among the Virginia Rules of Professional Conduct or the Model Rules promulgated by the American

---

[5] Insureds argue that the magistrate judge erred in relying on the requirements of Rule 26(b)(5)(B) as the basis for sanctions because Rule 26 does not apply in this situation. They assert that, because the Claims File was produced in response to a subpoena, and not in the course of discovery, Rule 45 governs. Defs.' Objs. 12, ECF No. 70. However, this argument is ineffective, because the requirements of Rule 26(b)(5)(B) are identical to requirements described in Rule 45(e)(2)(B). The only difference between the language of the two is that Rule 26 applies to information "produced in discovery," whereas Rule 45 applies to information "produced in response to a subpoena."

Bar Association ("ABA"), that are directly on point. This dearth of governing rules does not, however, absolve Insureds' counsel of their failure to notify Harleysville's counsel.

Legal Ethics Opinions ("LEOs") issued by the Virginia State Bar Standing Committee on Legal Ethics, while not binding on this or any court, provide persuasive guidance regarding the propriety of attorneys' conduct. LEO 1702 is particularly instructive in this case. In LEO 1702, the Committee addressed the conduct required where an attorney received a facsimile containing privileged information from opposing counsel. The opinion first notes that "[t]he absence of an explicit Disciplinary Rule does not create an ethical vacuum." LEO 1702, Inadvertent Receipt of Confidential Information; Zealous Representation (Nov. 24, 1997), 1999 WL 348823. Instead, it states, "[w]hen explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession." *Id.* (internal quotation marks and citation omitted). It further asserts that:

> Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; . . . to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety *but also the appearance of impropriety*.

*Id.* (internal quotation marks and citation omitted) (emphasis added).

Having clearly expressed that a lawyer's ethical duties extend beyond the black-letter rules, the opinion goes on to say that "a lawyer who receives inadvertently transmitted confidential documents from the opposing lawyer has a duty to notify the opposing lawyer promptly." *Id.* Importantly, this conclusion is not based on any particular rule or statute, but rather on the overarching principle that the attorney's "ethical polestar is conduct that reflects credit on and inspires public confidence in and respect for the integrity of the legal profession." *Id.*

Although LEO 1702 was decided in 1997, prior to the adoption of the Virginia Rules of Professional Conduct, the Committee has recently affirmed its applicability to the circumstances of this particular case.[6] In LEO 1871, the Committee observed that Supreme Court of Virginia Rule 4:1(b)(6)(ii) now governs a situation in which an attorney receives confidential information "in the discovery phase of litigation." LEO 1871, Inadvertent Receipt of Confidential Information During the Discovery Phase of Litigation (July 24, 2013), 2013 WL 6151729. However, "*[o]utside of the discovery process, the requirements of LEO 1702 fully apply.*" *Id.* (emphasis added). Thus, an attorney who receives

---

[6] It is worth noting that in issuing LEO 1702, the Committee relied in part on two non-binding Formal Opinions issued by the ABA's Committee on Ethics and Professional Responsibility — 92-368 and 94-382 — both of which have since been withdrawn. However, because the applicability of LEO 1702 was expressly affirmed in LEO 1871 without mention of the ABA's withdrawal of those opinions, and because LEO 1702 itself was based on far more than those two opinions, I find that LEO 1702 continues to be persuasive.

privileged material outside the discovery process — for example, by means of a subpoena on a third party — nevertheless has a "duty to notify the opposing lawyer promptly." LEO 1702 (Nov. 24, 1997), 1999 WL 348823.

At the evidentiary hearing before me, both sides presented expert testimony as to the ethical propriety of the Insureds' counsel's conduct. Paul G. Georgiadis testified on behalf of Harleysville and Bernard J. DiMuro testified on behalf of the Insureds. Both are experienced and prominent Virginia attorneys. Mr. Georgiadis served for 15 years as Assistant Bar Counsel for the Virginia State Bar, prosecuting ethics complaints, and now specializes in lawyer's professional responsibility issues, including the defense of lawyer discipline prosecutions. Mr. DiMuro is a former president of the Virginia State Bar and has previously qualified as an expert witness on matters relating to professional responsibility and the standard of care for lawyers in malpractice actions.

Mr. Georgiadis was of the opinion that Insureds' counsel acted improperly in their handling of the Claims File, while Mr. DiMuro was of the opposite opinion. While I respect Mr. DiMuro's long and varied experience, I find Mr. Georgiadis' opinion more persuasive. His pertinent experience with attorney conduct was greater and I find his analysis more in keeping with the applicable ethical rules and authorities.

## 2. Insureds' Counsel's Conduct.

For the reasons described above, I find that Insureds' counsel had an obligation to "promptly return, sequester, or destroy" the privileged materials, Fed. R. Civ. P. 45(e)(2)(B), with which they refused to comply. I also find that Insureds' counsel had a duty to notify Harleysville's counsel of the disclosure. Insureds' counsel does not dispute the fact that it did not provide notice, arguing instead that it had no such duty. Moreover, I find that Insureds' counsel had a duty to uphold the integrity of the legal profession and to strive to avoid impropriety, as well as the mere appearance of impropriety. They failed to do so.

Upon receiving NICB's response to their subpoena, Insureds' counsel accessed the link contained in Cesario's September 22 email, expecting to find the video described in the email. They found the video, but they also found the Claims File. Incorrectly assuming the Claims File had been intentionally produced by Harleysville to NICB, Insureds' counsel began reviewing its contents. When they encountered materials marked as privileged and confidential, they temporarily halted any review.

The materials marked as privileged and confidential are clearly privileged on their face. Upon review of those materials, Insureds' counsel knew or should have known that they were privileged, and Insureds' counsel do not dispute that they realized as such. Until that point, Insureds' counsel had done nothing wrong.

After realizing that the materials might be subject to a claim of privilege, however, and still incorrectly assuming that Harleysville had intentionally shared the Claims File with NICB, Insureds' counsel conducted their own research as to how they should proceed. Based on that research, Insureds' counsel concluded that any privilege had been waived, that they had no duty to notify Harleysville's counsel, and that they could treat the materials as non-privileged. They proceeded accordingly.

On July 1, 2016, a week after receiving NICB's subpoena response, Insureds' counsel mailed to Harleysville's counsel a DVD, which purportedly contained electronic copies of all the documents Insureds' counsel had received from NICB pursuant to the subpoena. Brown Letter, July 1, 2016, ECF No. 56-4. The DVD contained a copy of the September 22 email from Cesario to Rowe. However, it did not contain the Claims File.

At the second evidentiary hearing before me, one of the Insureds' attorneys, Mr. Brown, testified that when Insureds' counsel first reviewed the September 22 email, they believed that NICB intended to produce the video to them via the Box Folder. However, if Insureds' counsel genuinely believed the contents of the Box Folder were part of NICB's production, it appears that Insureds' counsel should have included the contents of the Box Folder on the DVD they sent to Harleysville's counsel. The fact that they failed to include the Claims File on the

DVD as being among the documents received from NICB strongly supports an inference that Insureds' counsel knew they were not supposed to have access to those documents. Alternatively, if Insureds' counsel believed that NICB only intended to produce the video, and not the Claims File, disclosure of the Claims File would necessarily have appeared to be inadvertent. Faced with an inadvertent disclosure, and in light of the law governing such disclosures, *see supra* at IV, Insureds' counsel should have notified either NICB or Harleysville's counsel.

In August 2016, Insureds' counsel produced a thumb drive to Harleysville's counsel that did contain the Claims File, among thousands of other documents. The Claims File was stored in a subfolder misleadingly named "NICB Video." At the hearing, Mr. Brown testified both that the subfolder was so named to match the subject line of the September 22 email and that it was so named because that was the designation NICB had used. However, the actual subject line of the email is "video," *see* Cesario Email, Ex. 3, ECF No. 53-3 — not "NICB Video" — so it is clear the folder names were not automatically populated with document titles or email subject lines. I thus infer that Insureds' counsel chose to name the folder "NICB Video," despite knowing that the folder included far more than a video. If Insureds' counsel truly believed that Harleysville had produced the Claims File to NICB and that NICB had, in turn, produced it to Insureds' counsel — and thus that there was no privilege issue — there would have been no reason to inaccurately

label the folder as containing only a video. Thus, the inaccurate label supports an inference that Insureds' counsel wished to conceal its possession of the Claims File from Harleysville's counsel to the extent it could do so without blatantly violating discovery rules.[7]

Additionally, in reviewing the contents of Insureds' counsel's thumb drive, Harleysville's counsel noted certain documents belonging to Insureds' counsel that appeared to be privileged. Harleysville's counsel notified Insureds' counsel of the disclosure. In response, Insureds' counsel asserted a claim of privilege and asked Harleysville's counsel to destroy the documents. Harleysville's counsel did so. Brown Letter, Aug. 29, 2016, ECF No. 53-4. Insureds' counsel's failure to alert Harleysville's counsel as to the disclosure of potentially privileged materials in the Claims File, as well as their refusal to return or destroy the materials following notice of the claim of privilege, is even more egregious when viewed in this context.

---

[7] Insureds' counsel claims that the Virginia State Bar's ethics hotline reached the same conclusion as they did, that is, that any privilege had been waived and that Insureds' counsel had no duty to notify Harleysville's counsel of the apparent disclosure. However, advice provided by the ethics hotline is "irrelevant, as it is impossible to know . . . precisely what information was conveyed to the ethics counselor." *Jeffers v. Inova Mount Vernon Hosp.*, No. 1:04CV820, 2005 WL 1229694, at *2 (E.D. Va. May 12, 2005). "In any event, Virginia State Bar ethics hotline advice does not relieve an attorney from the obligation of exercising [his] own judgment as to the proper ethical course to follow, nor does such advice relieve an attorney from shouldering the responsibility for the decisions [he] makes." *Id.*

In addition, I find it impermissible that Insureds' counsel did not voluntarily bring this matter before the court for resolution. Both Rule 45(e)(2)(B) and Rule 26(b)(5)(B) specifically allow the party who received the privileged information to "present the information under seal to the court . . . for a determination of the claim [of privilege]." Fed. R. Civ. P. 45(e)(2)(B); *see* Fed. R. Civ. P. 26(b)(5)(B). If Insureds' counsel believed that waiver was obvious, they would have had nothing to lose by bringing the question to the court. Moreover, they assert that they have an "unblemished record and hav[e] never been sanctioned by any Court anywhere," have "never had a bar complaint filed by any clients," and "hav[e] always acted responsibly and in accordance with all statutes [and rules]." Defs.' Objs. 15, ECF No. 70. Particularly in light of this record, even if they truly believed any privilege had been waived, why not err on the side of caution and ask the court to rule on the issue?

Insureds' counsel violated Rule 45(e)(2)(B) when they refused to return, sequester, or destroy the privileged material upon Harleysville's counsel's request. In addition, and perhaps more importantly, they failed to adhere to the ethical standards espoused by the Virginia State Bar. Attorneys must strive to avoid both impropriety as well as the mere appearance of impropriety in their conduct, and they must uphold the integrity of the profession. By attempting to conceal their possession of the Claims File and usurping the role of the court by making a

unilateral determination on the issue of waiver, Insureds' counsel fell far short of their responsibility.

## B. Disqualification is Not Warranted.

Harleysville has moved to disqualify Insureds' counsel from continuing to participate in this litigation, arguing that Insureds' counsel's conduct has created an appearance of impropriety that necessitates disqualification. Pl.'s Objs. 22, ECF No. 73. Based upon all of the circumstances of the case, I find that disqualification is not warranted.

The Fourth Circuit has noted that disqualification decisions should be based on the circumstances of each case and an analysis of the harm to the parties, rather than on a mechanical application of the applicable ethical rules. *See Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir. 1978). Where an attorney faces disqualification for failing to notify opposing counsel of the disclosure of privileged material, courts have often applied a six-factor test first articulated by the Supreme Court of Texas in *In Re Meador,* 968 S.W.2d 346 (Tex. 1998). That decision articulated a list of factors that it emphasized, "apply only when a lawyer receives an opponent's privileged materials *outside the normal course of discovery*." 968 S.W.2d at 352 (emphasis added). Those factors are:

> (1) whether the attorney knew or should have known that the material was privileged;

(2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

(3) the extent to which the attorney reviews and digests the privileged information;

(4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

(5) the extent to which movant may be at fault for the unauthorized disclosure;

(6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Id.*[8] at 351-52. I consider each factor in turn as it applies to the present matter.

As I note above, Insureds' counsel knew, or at the very least should have known that the material was privileged. Insureds' counsel did not notify Harleysville's counsel that they had received the privileged materials. Additionally, Insureds' counsel reviewed the privileged materials and disseminated them to their clients' criminal defense counsel for use in the criminal case. Thus, the first three factors weigh in favor of disqualification.

---

[8] I note that *Meador* was decided in 1998, prior to the ABA's withdrawal of Formal Opinion 94-382. However, while *Meador* discusses Formal Opinion 94-382, it expressly notes that the opinion is merely a "guideline." *In re Meador*, 968 S.W.2d at 351. Moreover, courts have continued to apply *Meador*'s six-factor test in the years following the ABA's withdrawal of Formal Opinion 94-382. *See, e.g.*, *Raymond v. Spirit AeroSystems Holdings, Inc.*, No. 16-1282, 2017 WL 2831485 (D. Kan. Jun. 30, 2017); *Merits Incentives, LLC v. Eighth Judicial Dist. Ct. of State*, 262 F.3d 720, 726 (Nev. 2011).

The last three factors, however, weigh against disqualification. Although the information at issue was certainly privileged, I did not find, in my in camera review, any "smoking gun" materials that would necessarily make or break either party's case. In addition, I believe the Insureds would suffer prejudice were their counsel to be disqualified. While Insureds' counsel is certainly not the only law firm capable of providing adequate representation, they have been working on this case from the beginning, and, more importantly, their receipt of the Claims File occurred through no fault of their clients. *See Richards v. Jain,* 168 F. Supp. 2d 1195, 1208 (W.D. Wash. 2001) (disqualification where the nonmovant party was responsible for the breach of privilege).

Finally, although the disclosure of the Claims File was inadvertent, the mistakes by Nationwide's employee initiated this issue. This is not a case of involuntary disclosure, where an unauthorized third party shared the privileged information with opposing counsel through no fault of the movant. If Mr. Cesario had not erroneously believed that the "sharing" link sent to NICB would expire, or if he had stored the video and the Claims File in two separate folders on the Box, Inc. website, the disclosure would never have occurred. *See, e.g.*, *Maldonado v. New Jersey*, 225 F.R.D. 120 (D.N.J. 2004) (disqualification where disclosure was involuntary); *Richards*, 168 F. Supp. 2d 1195 (same); *Resolution Trust Corp. v.*

*First of Am. Bank*, 868 F. Supp. 217 (1994) (no disqualification where disclosure was inadvertent).

Thus, although I am within my discretion to disqualify Insureds' counsel from this litigation, in light of the above factors, I am not convinced that the "blunt remedy of disqualification is appropriate." *Raymond*, 2017 WL 2831485, at *18 (internal quotation marks and citation omitted).

### C. Evidentiary Sanctions Are Appropriate.

In their motion seeking disqualification, Harleysville requests that the court "bar the use of Harleysville's privileged and confidential files during this litigation." Mot. to Disqualify 1, ECF No. 52. The court has the inherent authority to impose an evidentiary sanction in order to "achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks and cite omitted); *see also Raymond*, 2017 WL 2831485, at *18. For the reasons described below, I will grant Harleysville's request.

In *Raymond v. Spirit AeroSystems Holdings*, *Inc.* the District of Kansas considered four factors in determining whether improperly obtained documents could be used:

(1) whether there was improper conduct by counsel;

(2) whether there was a direct benefit to the appropriator;

(3) whether other disincentives to the theft were available;

(4) whether there was any prejudice to the opposing party.

2017 WL 2831485, at *18 (citing *Brado v. Vocera Commc'ns, Inc.*, 14 F. Supp. 3d 1316, 1320-22 (N.D. Cal. 2014)).  I discuss each factor in turn.

I have already discussed Insureds' counsel's improper conduct in this matter. *See supra* at V.B.2.

In addition, though I do not believe the Claims File contained information that would necessarily make the Insureds' case, I do find that the Insureds nevertheless directly benefited from review of the privileged materials in the Claims File.

Other disincentives to a party's improper access of privileged documents may include mere return of the documents, full exclusion of the documents, disqualification of counsel, and civil claims for conversion of the documents.  *See Raymond*, 2017 WL 2831485, at *19.  Where some disincentive besides exclusion is available, "courts tend to lean toward ordering only the return of the documents." *Id.*  For example, in *Brado*, where the documents were taken by a party who was subsequently exposed to claims of breach of contract and conversion, mere return of the documents was sufficient. *Brado*, 14 F. Supp. 3d at 1321.  Where other disincentives are unavailable, however, exclusion may be appropriate. *Raymond*, 2017 WL 2831485, at *19.  Of course, civil conversion claims are not appropriate in a case like this, where the improper access was the

result of an inadvertent disclosure rather than theft. In addition, I have already concluded that disqualification is not warranted. Thus, exclusion and return of the documents are the only available sanctions. In light of the impropriety of Insureds' counsel's conduct and the nature of the privileged materials, mere return of the documents under these circumstances would not be sufficient. Allowing Insureds' counsel to use the knowledge gained through their improper review would reward them for their inexcusable behavior. This factor therefore weighs in favor of exclusion as an appropriate remedy.

Finally, Insureds' counsel's review of the privileged material undoubtedly prejudiced Harleysville. Where "all of the information wrongfully obtained would have been disclosed through the discovery process later," it may be difficult to show prejudice. *Id.* The privileged materials in the Claims File, however, would not have been discoverable. They consist of communications protected by the attorney-client privilege as well as attorney work product. It would have been impossible for Insureds' counsel to have obtained these documents in the normal course of discovery. As the court in *Raymond* noted, "[e]ven severe evidentiary sanctions cannot erase what . . . counsel learned from their review." *Id.* Moreover, this breach of trust by Insureds' counsel will undoubtedly burden the litigation going forward. This factor therefore weighs in favor of exclusion.

I therefore find that an evidentiary sanction is appropriate. Accordingly, the Insureds must not use any information contained in the privileged material, or information derived from such material, to seek additional information in discovery, through a subpoena, or in any other manner. Moreover, the Insureds must not use the information contained in or derived from the privileged material for any purpose in any filing or proceedings (including trial) in this action or any other related civil action.

The Insureds will be permitted to use evidence contained in the privileged material, so long as such evidence was independently obtained not arising from the privileged material. If contested, the Insureds must be prepared to prove that the evidence sought to be used was, in fact, independently obtained. Insureds' counsel must also certify, for all future document productions or discovery responses, that the information on which the production or response is based has been independently obtained not arising from the privileged material.

Harleysville must promptly designate to the Insureds the material contained in the Claims File that Harleysville deems privileged. If the Insureds dispute any such designation, it must promptly seek a determination of the issue by the magistrate judge.

The Insureds and their counsel must not make any copies of the privileged material and must not provide or communicate the privileged material to any other person or entity.[9]

## VI. MOTION TO STRIKE.

Following the second evidentiary hearing, Insureds filed a Motion to Strike two expert reports filed by Harleysville's counsel. The first is a report, ECF No. 101-1, filed by Mr. Georgiadis, who testified at the hearing. The second is a report, ECF No. 102, filed by Michael Rigsby, who did not testify.

I find that consideration of the Rigsby report is inappropriate. Rigsby did not testify at the hearing and was not subject to cross-examination. The fact that Insureds' counsel opened the door by asking Georgiadis about Rigsby's opinion does not change the hearsay nature of that opinion. In addition, I find that the Georgiadis report is unnecessary. Georgiadis testified at length during the hearing and was subject both to cross-examination by Insureds' counsel and to questioning by the court. Accordingly, I will grant Insureds' Motion to Strike both expert reports from the record.

## VII. CONCLUSION.

For the foregoing reasons, it is hereby **ORDERED** as follows:

---

[9] The magistrate judge imposed a monetary sanction on Insureds' counsel. In view of my evidentiary sanction, I will sustain the objection to the monetary sanction.

1.  Harleysville's Objections (ECF No. 73) to the magistrate judge's Order (ECF No. 69) are GRANTED IN PART AND DENIED IN PART;

2.  The Insureds' Objections (ECF No. 70) to the magistrate judge's Order (ECF No. 69) are GRANTED, and the magistrate judge's Order imposing monetary sanctions (ECF No. 100) is VACATED;

3.  The Insureds' Motion to Strike (ECF No. 106) is GRANTED;

4.  The Insureds must not use any information contained in the privileged material, or information derived from such material, to seek additional information in discovery, through a subpoena, or in any other manner.  Moreover, the Insureds must not use the information contained in or derived from the privileged material for any purpose in any filing or proceedings (including trial) in this action or any other related civil action.

The Insureds will be permitted to use evidence contained in the privileged material, so long as such evidence was independently obtained not arising from the privileged material.  If contested, the Insureds must be prepared to prove that the evidence sought to be used was, in fact, independently obtained.  Insureds' counsel must also certify, for all future document productions or discovery responses, that the information on which the production or response is based has been independently obtained not arising from the privileged material.

Harleysville must promptly designate to the Insureds the material contained in the Claims File that Harleysville deems privileged.  If the Insureds dispute any such designation, it must forthwith seek a determination of the issue by the magistrate judge.

The Insureds and their counsel must not make any copies of the privileged material and must not provide or communicate the privileged material to any other person or entity.

ENTER:  October 2, 2017

/s/  James P. Jones
United States District Judge